RODGER R. COLE (CSB NO. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:  (650) 988-8500
Facsimile:   (650) 938-5200

JENNIFER L. KELLY (CSB NO. 193416)
jkelly@fenwick.com
MARY E. MILIONIS (CSB NO. 238827)
mmilionis@fenwick.com
FENWICK & WEST LLP
555 California Street - 12th Floor
San Francisco, CA 94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

Attorneys for Plaintiffs
Capcom Co., Ltd. and Capcom Entertainment, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CAPCOM CO., LTD. AND CAPCOM ENTERTAINMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE MKR GROUP, INC.,<br><br>Defendant. | Case No. CV 08 0904<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

---

COMPLAINT FOR DECL. RELIEF                                                                            CASE NO. _____

Plaintiffs Capcom Co., Ltd. and Capcom Entertainment, Inc. (collectively, "Plaintiffs" or "Capcom") for their Complaint allege as follows:

### THE NATURE OF THE ACTION

1. This is an action for declaratory judgment and attorneys' fees. By this action, Capcom seeks to eliminate any doubt that its "Dead Rising" video game, released within North America in August 2006, does not infringe on any copyright, trademark, or other intellectual property rights in and to the "George A. Romero's Dawn of the Dead" motion pictures allegedly owned by defendant The MKR Group, Inc. ("MKR").

2. Specifically, Capcom seeks a declaration from this Court that Dead Rising does not infringe on any copyrights owned by MKR because any similarities between Dead Rising and George A. Romero's Dawn of the Dead are based on the wholly unprotectible idea of humans battling zombies in a shopping mall, and that this unprotectible idea will necessarily yield similarities of ideas, materials in the public domain, facts, *scenes à faire* and other trivial and random similarities that cannot give rise to a copyright claim. Capcom further seeks a declaration that its distribution, marketing and promotion of Dead Rising is not likely to confuse consumers as to the source or origin of the game or to dilute any alleged distinctiveness of any trademarks held by MKR relating to George A. Romero's Dawn of the Dead, particularly in light of Capcom's use of a prominent disclaimer on all Dead Rising product packaging that expressly disavows any connection between Dead Rising and George A. Romero's Dawn of the Dead. Capcom seeks declaratory judgment on these bases (and the additional bases described herein) so that there will be no controversy clouding the right of Capcom or its distributors to continue distributing Dead Rising or ancillary products.

### JURISDICTION AND VENUE

3. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.* This Court has subject matter jurisdiction over the claims asserted herein under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a

COMPLAINT FOR DECL. RELIEF                                    CASE NO. _____

substantial part of the events giving rise to the claims herein occurred in this judicial district, and that MKR is subject to personal jurisdiction in this district by virtue of its transacting, doing and soliciting business in this district.

## INTRADISTRICT ASSIGNMENT

5. For purposes of Civil Local Rule 3-2(d), this action arises in San Mateo County, where plaintiff Capcom Entertainment, Inc. is located and where a substantial part of the actions, statements, and threats described below were directed.

## PARTIES

6. Plaintiff Capcom Co., Ltd. ("Capcom Japan") is a company organized and existing under the laws of the country of Japan, with its principal place of business in Osaka, Japan.

7. Plaintiff Capcom Entertainment, Inc. ("CEI") is a wholly owned subsidiary of Capcom U.S.A., Inc., which is, in turn, a wholly-owned subsidiary of Capcom Japan. CEI is a company organized and existing under the laws of the State of California, licensed to do business in California, with its principal place of business in San Mateo, California. *Inter alia*, CEI assists in the distribution of Capcom video game titles in the North American market, including Dead Rising.

8. Capcom is informed and believes, and on that basis alleges, that MKR is a New York corporation with its principal place of business in New York, New York.

9. Capcom is informed and believes, and on that basis alleges, that MKR has engaged in continuous and systematic business in California and within this judicial district, by, *inter alia*, producing motion picture and television shows, distributing or authorizing the distribution of such motion picture and television shows, and selling or authorizing the sale of ancillary merchandise in this judicial district.

## GENERAL ALLEGATIONS

### Capcom And Its Dead Rising Video Game

10. Capcom is a leading worldwide developer, publisher and distributor of video game software for leading game consoles and handheld systems, including the Microsoft Xbox 360™ and PLAYSTATION®3 consoles. Over the years, Capcom has created some of the biggest and

1  longest running franchises in video game history, including Resident Evil, Street Fighter, and
2  Mega Man. Capcom's award-winning video games have sold millions of units around the world,
3  including within the United States and the Northern District of California.

4      11.    There are many genres of video games, including shoot 'em up, beat 'em up,
5  fighting, and survival horror. Each has its own distinct characteristics. The survival horror genre,
6  which is most commonly associated with Capcom's wildly successful Resident Evil franchise
7  (which featured flesh-eating zombies), is defined by both theme and gameplay style. The theme
8  is typically dark, violent and supernatural, like a horror movie, and the games use exploration as
9  routes of progression through the game. The player's goal is generally to "survive" long enough
10 to escape from an isolated or abandoned town or structure that is overrun by zombies or monsters.
11 There is often a "safe haven" where characters can rest, eat, regain strength or "health" and
12 temporarily remain safe from attack. The player typically must hunt for food and/or weapons
13 (which are often makeshift, rather than the typical gun or knife). Unlike the fighting genre, which
14 generally involves one-on-one combat with a single enemy, the player in a survival horror game
15 must typically contend with numerous enemies at once. Thus, most survivor games are single
16 player only.

17     12.    On August 8, 2006, following several years of development in Japan, Capcom
18 released within North America a single player survival horror video game called "Dead Rising,"
19 designed exclusively for the Xbox 360™ platform. As a promotional tool, a few days before its
20 release, on August 4, 2006, Microsoft Corporation ("Microsoft") offered a free playable demo of
21 the game on its Xbox Live Marketplace.

22     13.    Dead Rising, marketed with the tag line "Chop Til You Drop," follows the
23 adventures of Frank West, an ambitious freelance photojournalist intent on capturing on film the
24 story of a lifetime: why the fictional town of Willamette, Colorado has been quarantined by the
25 National Guard. In pursuit of a juicy lead, Frank makes his way to Willamette only to find that it
26 has become overrun with zombies. He surveys the city via helicopter, then directs the pilot to
27 drop him off at the local shopping mall, which has a helipad and is located in the center of the
28 city. After the pilot drops Frank off, he tells Frank he'll be back to pick him up in three days and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

then takes off. Frank then enters the mall, finding survivors trying to barricade the mall entrance to keep zombies out. As the zombies break through (which occurs very early in the game), a Homeland Security officer shouts at everyone to hurry to the mall's security room (the "safe haven") for safety, but Frank is the only one who makes it. The game player, playing the role of Frank, then engages in an action-packed, nonstop battle against hordes of zombies and other survivors driven to madness by the zombie infestation (known as "Psychopaths"). The player also faces a wide variety of choices as to other courses of action, including helping other survivors make it to safety, locating weapons and supplies, and searching for the truth behind the horrendous epidemic—all while trying to fight off the zombies and Psychopaths and stay alive getting food and drink. Throughout this adventure, the player uses Frank's photojournalistic skills to capture the insanity on film: the better the photograph, the more points the player is awarded. The player's ultimate goal is to survive for 3 days (6 hours in real time). The variety of stores in the mall offers an endless supply of survival resources for Frank, including vehicles, food, clothing, and makeshift weapons that can be used to kill zombies and Psychopaths.

14. Dead Rising was an instant success, earning both rave reviews and multiple awards. According to Metacritic.com, a website that compiles reviews of video games by respected critics, Dead Rising received a score of 85 out of 100 (based on 82 reviews). The reviews praised Dead Rising for its setting in a mall, which provides for endless exploration and creative ways to kill enemies. In its "Best of 2006," Gamespot awarded Dead Rising "Best Action Adventure Game of 2006," "Best Sound Effects" and "Best Use of Xbox 360 Achievement Points," and commented that Dead Rising "[is] zombie action for people who want zombie action, and it's simply a great piece of entertainment."

15. In addition to Dead Rising, there are literally dozens of other video games featuring a protagonist battling hordes of the flesh-eating zombies typically associated with horror films. This includes, among many others, Resident Evil (player fights zombies in an ominous mansion), The Evil Dead (player fights zombies in an isolated cabin), Beast Busters (player fights zombies who have taken over a city), CarnEvil (player fights zombies in an amusement park), and Zombi (players fight zombies in a shopping mall).

16. On May 20, 2005, Capcom Japan filed an application to register its "DEAD RISING" trademark with the United States Patent and Trademark Office (Application Serial No. 78/633,771), for use with computer game software, video game machines, and related products.

**The Dawn of the Dead Motion Pictures**

17. "George A. Romero's Dawn of the Dead" is a zombie horror film released in or about 1979 (the "1979 Film"), the second in a series of zombie horror films directed by George A. Romero that included Night of the Living Dead, Day of the Dead and Land of the Dead. Dawn of the Dead involved subtexts of racism, consumerism, and materialism. The 1979 Film depicts the country struck by a plague, in which the dead are reanimated as flesh-eating zombies. After much chaos and a scene involving a SWAT team raid on an apartment building in which numerous minorities are slaughtered, the film's four main characters take refuge in a shopping mall. Once there, the characters plunder the stores, indulging their every material desire (showcasing American consumerism and materialism at its finest) and attempt to keep the zombies out of the mall. When the zombies finally do gain entrance (toward the end of the movie), a battle ensues during which two of the four main characters are bitten by zombies, and the film concludes with the two remaining survivors escaping to the roof and flying away in a partially-fueled helicopter.

18. In 2004, Universal Pictures released a re-make of the 1979 Film (the "2004 Remake"). While the 2004 Remake includes scenes depicting a handful of survivors battling zombies in a shopping mall, it departs in many significant respects from the 1979 Film, and appears to be only loosely based on the 1979 Film.

19. MKR claims to be the exclusive owner of the copyright in the 1979 Film. MKR also claims that the 2004 Remake is an authorized derivative work based on the 1979 Film which was co-produced and distributed under license from MKR. MKR further claims to own those elements from the 2004 Remake which were copied from the 1979 Film.

20. MKR also claims to be the exclusive owner of the trademarks and service marks for "DAWN OF THE DEAD," "GEORGE A. ROMERO'S DAWN OF THE DEAD," and the "Zombie Head" design for use in connection with a variety of products and services, including

computer games. However, MKR has not obtained any federal trademark registrations (nor, upon information and belief, has it ever applied to register) the "DAWN OF THE DEAD" mark except in connection with the prefix "GEORGE A. ROMERO'S." Rather, MKR has obtained federal trademark registrations only for the word mark "GEORGE A. ROMERO'S DAWN OF THE DEAD" and a design depicting a partial zombie head. The marks described herein, of which MKR claims to be the exclusive owner, will hereinafter be referred to as the "MKR Marks."

**The Controversy Between The Parties**

21.     In March 2006, several months before Dead Rising was released, Capcom received a letter dated March 17, 2006 from New Line Cinema, which purported to be the licensing agent for MKR, concerning the upcoming release of Dead Rising. In that letter, New Line Cinema stated its position that Dead Rising infringed MKR's copyright, trademark, and other intellectual property rights in and to the motion picture "George A. Romero's Dawn of the Dead." The letter did not specify whether MKR was claiming infringement of just the 1979 Film, or the 2004 Remake as well. New Line Cinema sent Capcom a further letter dated June 9, 2006, reiterating its position and stating that it had retained outside counsel to prepare a complaint against Capcom that would include a claim for damages as well as a request for injunctive relief preventing release of the game, which would be filed if the parties could not resolve their dispute.

22.     The parties and their outside counsel thereafter engaged in discussions in an attempt to resolve the matter without litigation. During these discussions, Capcom repeatedly advised New Line Cinema and MKR of its belief that Dead Rising did not infringe on any alleged copyright, trademark, or other intellectual property rights belonging to MKR related to the 1979 Film or the 2004 Remake because the game and the movies involved vastly different storylines, sharing only the very general, unprotectible idea of zombies in a shopping mall.

23.     The parties had not resolved their dispute by the time Dead Rising was released in August 2006. MKR, however, had made no attempt to preliminarily enjoin its distribution, nor did it otherwise commence litigation against Capcom. Nonetheless faced with the prospect of eventual litigation, Capcom opted to include a prominent disclaimer on its product packaging that

reads as follows:

> THIS GAME WAS NOT DEVELOPED, APPROVED OR LICENSED BY THE OWNERS OR CREATORS OF GEORGE A. ROMERO'S DAWN OF THE DEAD™

A true and correct copy of images depicting the product packaging for Dead Rising is attached hereto as Exhibit A. This disclaimer has appeared on the product packaging at all times since the product was first released.

24. Over the next year and a half, the parties engaged in only very sporadic discussions concerning MKR's claims. On September 4, 2007, MKR copied both Microsoft and Best Buy Co., Inc. ("Best Buy") (a major distributor of Capcom games, including Dead Rising) on a communication to Capcom, clearly signaling its intention to drag these companies into litigation against Capcom if Capcom did not accede to its demands.

25. Meanwhile, on or about January 29, 2007, MKR filed a Notice of Opposition (No. 91175392) to Capcom Japan's application to federally register its "DEAD RISING" trademark, opposing the registration on the basis that consumers are likely to be confused that products sold in connection with the Dead Rising mark originate from or are authorized by MKR, that any defects in such products would be attributed to MKR, and that registration of the DEAD RISING mark would dilute the distinctive quality of the MKR Marks. Capcom Japan filed its Answer to MKR's Notice of Opposition on or about December 21, 2007.

26. On February 6, 2008, MKR's outside counsel sent a letter and a copy of a draft complaint to counsel for Capcom, Microsoft, and Best Buy. In the letter, MKR states its intention to file the complaint, which asserts claims for copyright and trademark infringement and related claims against Capcom, Microsoft and Best Buy based on marketing and distribution of the Dead Rising game, "unless [the parties] can reach a written agreement on terms acceptable to MKR within three weeks of this notice." The letter further states that if resolution is not reached within that time frame, the principal of MKR, Richard Rubinstein, will no longer turn down requests to be interviewed concerning the parties' dispute.

27. The explicit threat of litigation described above has created in Capcom a reasonable apprehension of imminent suit by MKR for copyright and trademark infringement

relating to the Dead Rising game.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment – No Copyright Infringement: 17 U.S.C. § 501)

28. Capcom incorporates by reference all the allegations of paragraphs 1 through 27, inclusive.

29. Because of MKR's actions and threats described herein, Capcom has a reasonable and strong apprehension that it and/or related third parties will soon be faced with a copyright infringement suit brought by MKR. Accordingly, an actual controversy has arisen and exists between Capcom and MKR within the meaning of 28 U.S.C. § 2201.

30. Capcom contends that Dead Rising was independently created and that any similarities between the 1979 Film, the 2004 Remake, and Dead Rising are based on the unprotectible theme of zombies in a shopping mall, and that this unprotectible theme will necessarily yield similarities of ideas, materials in the public domain, facts, *scenes á faire* and other trivial and random similarities.

31. Capcom contends that it has not infringed, and is not now infringing, any copyright relating to the 1979 Film or the 2004 Remake.

32. Capcom contends that any of its actions with regard to the 1979 Film and the 2004 Remake constitute fair use pursuant to 17 U.S.C. § 107.

33. Capcom seeks a declaration that Dead Rising does not infringe any copyright relating to the 1979 Film or the 2004 Remake so that there will be no controversy clouding Capcom's right to continue distributing the Dead Rising game or ancillary products.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment – No Trademark Infringement: 15 U.S.C. §1114)

34. Capcom incorporates by reference all the allegations of paragraphs 1 through 27, inclusive.

35. Because of MKR's actions and threats described herein, Capcom has a reasonable and strong apprehension that it and/or related third parties will soon be faced with a trademark infringement suit brought by MKR. Accordingly, an actual controversy has arisen and exists

1    between Capcom and MKR within the meaning of 28 U.S.C. § 2201.

2    36.  Capcom contends that no appreciable portion of the relevant public has come to associate the MKR Marks with MKR and that those marks do not serve in the minds of the public to identify the source of MKR's goods and services; and that accordingly MKR has no valid or enforceable trademark in the MKR Marks.

37.  Capcom contends that its Dead Rising game (including the marketing of same) is not likely to cause confusion, mistake or deception among consumers as to the source or origin of the game, particularly in light of Capcom's use of a prominent disclaimer expressly disavowing any connection between Dead Rising and George A. Romero's Dawn of the Dead.

38.  Capcom seeks a declaration that Dead Rising does not infringe any of the MKR Marks so that there will be no controversy clouding Capcom's right to continue distributing the Dead Rising game or ancillary products.

### THIRD CLAIM FOR RELIEF
(Declaratory Judgment – No False Designation of Origin: 17 U.S.C. §1125)

39.  Capcom incorporates by reference all the allegations of paragraphs 1 through 27, inclusive.

40.  Because of MKR's actions and threats described herein, Capcom has a reasonable and strong apprehension that it and/or related third parties will soon be faced with a claim for false designation of origin under Section 43(a) of the Lanham Act brought by MKR. Accordingly, an actual controversy has arisen and exists between Capcom and MKR within the meaning of 28 U.S.C. § 2201.

41.  Capcom contends that its use of the DEAD RISING mark and distribution and marketing of the Dead Rising game does not constitute a false designation of origin, and is not likely to confuse or deceive consumers as to the source, origin, sponsorship, affiliation, and/or quality of its and/or MKR's goods or services, particularly in light of Capcom's use of a prominent disclaimer expressly disavowing any connection between Dead Rising and George A. Romero's Dawn of the Dead.

42.  Capcom seeks a declaration that its use of the DEAD RISING mark and its

distribution and marketing of the Dead Rising game does not constitute a false designation of origin under Section 43(a) of the Lanham Act so that there will be no controversy clouding Capcom's right to continue distributing the Dead Rising game or ancillary products.

### FOURTH CLAIM FOR RELIEF
(Declaratory Judgment – No False Advertising/Unfair Competition: 17 U.S.C. § 1125)

43.    Capcom incorporates by reference all the allegations of paragraphs 1 through 27, inclusive.

44.    Because of MKR's actions and threats described herein, Capcom has a reasonable and strong apprehension that it and/or related third parties will soon be faced with a claim for false advertising and unfair competition under Section 43(a) of the Lanham Act brought by MKR. Accordingly, an actual controversy has arisen and exists between Capcom and MKR within the meaning of 28 U.S.C. § 2201.

45.    Capcom contends that its marketing and promotion of the Dead Rising game does not constitute false advertising or unfair competition, and is not likely to confuse or deceive consumers as to the source, origin, sponsorship, affiliation, and/or quality of its and/or MKR's goods or services, particularly in light of Capcom's use of a prominent disclaimer expressly disavowing any connection between Dead Rising and George A. Romero's Dawn of the Dead.

46.    Capcom seeks a declaration that its use of the DEAD RISING mark and its distribution and marketing of the Dead Rising game does not constitute false advertising or unfair competition under Section 43(a) of the Lanham Act so that there will be no controversy clouding Capcom's right to continue distributing the Dead Rising game or ancillary products.

### FIFTH CLAIM FOR RELIEF
(Declaratory Judgment – No Trademark Dilution: 17 U.S.C. § 1125(c))

47.    Capcom incorporates by reference all the allegations of paragraphs 1 through 27, inclusive.

48.    Because of MKR's actions and threats described herein, Capcom has a reasonable and strong apprehension that it and/or related third parties will soon be faced with a trademark dilution suit brought by MKR.  Accordingly, an actual controversy has arisen and exists between

1  Capcom and MKR within the meaning of 28 U.S.C. § 2201.

2  49.  Capcom contends that the MKR Marks are not famous marks within the meaning of Section 43(c) of the Lanham Act.

50.  Capcom contends that its Dead Rising game (including the marketing of same) does not, and is not likely to, dilute any alleged distinctive quality of the MKR Marks.

51.  Capcom seeks a declaration that Dead Rising does not dilute any alleged distinctive quality of the MKR Marks so that there will be no controversy clouding Capcom's right to continue distributing the Dead Rising game or ancillary products.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment – No Common Law Trademark Infringement)

52.  Capcom incorporates by reference all the allegations of paragraphs 1 through 27, inclusive.

53.  Because of MKR's actions and threats described herein, Capcom has a reasonable and strong apprehension that it and/or related third parties will soon be faced with a claim for common law trademark infringement brought by MKR. Accordingly, an actual controversy has arisen and exists between Capcom and MKR within the meaning of 28 U.S.C. § 2201.

54.  Capcom contends that no appreciable portion of the relevant public has come to associate the MKR Marks with MKR and that those marks do not serve in the minds of the public to identify the source of MKR's goods and services; and that accordingly MKR has no valid or enforceable trademark in the MKR Marks.

55.  Capcom contends that its Dead Rising game (including the marketing of same) is not likely to cause confusion, mistake or deception among consumers as to the source or origin of the game, particularly in light of Capcom's use of a prominent disclaimer expressly disavowing any connection between Dead Rising and George A. Romero's Dawn of the Dead.

56.  Capcom seeks a declaration that its use of the DEAD RISING mark and its distribution and marketing of the Dead Rising game does not constitute common law trademark infringement so that there will be no controversy clouding Capcom's right to continue distributing the Dead Rising game or ancillary products.

**PRAYER FOR RELIEF**

THEREFORE, Capcom prays for judgment against MKR as follows:

    A.    Capcom requests a declaration that:

        (a)    Capcom has not infringed any copyrights owned by MKR related to the 1979 Film or the 2004 Remake;

        (b)    Capcom has not infringed any federally registered trademarks purportedly owned by MKR, including "GEORGE A. ROMERO'S DAWN OF THE DEAD" and the Zombie head design;

        (c)    Capcom's distribution and marketing of the Dead Rising video game and ancillary products does not constitute a false designation of origin under Section 43(a) of the Lanham Act;

        (d)    Capcom's marketing and promotion of the Dead Rising video game and ancillary products does not constitute false advertising or unfair competition under Section 43(a) of the Lanham Act;

        (e)    Capcom's distribution, marketing and promotion of the Dead Rising video game does not dilute, and is not likely to dilute, any alleged distinctive quality of any of the MKR Marks;

        (f)    Capcom has not infringed any common law trademarks purportedly owned by MKR, including "DAWN OF THE DEAD," "GEORGE A. ROMERO'S DAWN OF THE DEAD," and the Zombie head design;

    B.    Injunctive relief restraining MKR, its agents, licensees, servants, employees, successors, and assigns, and all others in concert and privity with them, from bringing any lawsuit or threat against Capcom or any other person or entity for copyright or trademark infringement or dilution in connection with the development, marketing, or distribution of the Dead Rising game.

    C.    Entry of an order pursuant to 15 U.S.C. § 1119 directing the United States Patent & Trademark Office to grant Capcom Japan's application to register the mark "Dead Rising" (Serial No. 78/633,771).

    D.    An award of the costs, expenses, and attorneys' fees incurred by Capcom

1 | herein pursuant to pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117; and

2 |   E. Such other and further relief as the Court deems proper and just.

Dated: February 12, 2008      FENWICK & WEST LLP

By: _____
    Rodger R. Cole

Attorneys for Plaintiffs
Capcom Co., Ltd. and Capcom Entertainment, Inc.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Microsoft Corporation (manufacturer of Xbox 360, the video game platform on which Dead Rising video games are played), and Best Buy Co., Inc. (major retailer of the Dead Rising video game).

Dated: February 12, 2008

FENWICK & WEST LLP

By: /s/ Rodger R. Cole
Rodger R. Cole

Attorneys for Plaintiffs
Capcom Co., Ltd. and Capcom Entertainment, Inc.

# **EXHIBIT A**

  

# DEADRISING



THIS GAME WAS NOT DEVELOPED, APPROVED OR LICENSED BY THE OWNERS OR CREATORS OF GEORGE A. ROMERO'S DAWN OF THE DEAD™

CAPCOM®





