1  RODGER R. COLE (CSB NO. 178865)
   rcole@fenwick.com
2  FENWICK & WEST LLP
   Silicon Valley Center
3  801 California Street
   Mountain View, CA  94041
4  Telephone:     (650) 988-8500
   Facsimile:      (650) 938-5200

5  JENNIFER L. KELLY (CSB NO. 193416)
   jkelly@fenwick.com
6  MARY E. MILIONIS (CSB NO. 238827)
   mmilionis@fenwick.com
7  FENWICK & WEST LLP
   555 California Street, 12th Floor
8  San Francisco, CA  94104
   Telephone:     (415) 875-2300
9  Facsimile:      (415) 281-1350

10 Attorneys for Plaintiffs and Counterclaim-defendants
   Capcom Co., Ltd. and Capcom Entertainment, Inc.,
11 and Third-Party Defendant Capcom U.S.A., Inc.

12                          UNITED STATES DISTRICT COURT

13                         NORTHERN DISTRICT OF CALIFORNIA

14                                  SAN JOSE DIVISION

| | |
|---|---|
| 15  CAPCOM CO., LTD. AND CAPCOM ENTERTAINMENT, INC., | Case No.  CV-08-0904 RS |
| 16  Plaintiffs, | **PLAINTIFFS' AND THIRD-PARTY DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS AND THIRD PARTY COMPLAINT** |
| 17  v. | |
| 18  THE MKR GROUP, INC., | |
| 19  Defendant. | [Fed. R. Civ. Proc. 12(b)(6)] |
| 20  THE MKR GROUP, INC., | Date:        September 3, 2008<br>Time:       9:30 a.m.<br>Courtroom: 4, 5th Floor<br>Judge:       The Hon. Richard Seeborg |
| 21  Counterclaim-Plaintiff and Third-Party Plaintiff, | |
| 22  v. | |
| 23  CAPCOM CO., LTD. AND CAPCOM ENTERTAINMENT, INC., | |
| 24  Counterclaim-Defendants, | |
| 25  and | |
| 26  CAPCOM U.S.A, INC., | |
| 27  Third-Party Defendant. | |
| 28 | |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. MKR'S COPYRIGHT CLAIM FAILS AS A MATTER OF LAW ..... 1

A. This Court Can And Should Dismiss This Claim With Prejudice Now ..... 1

1. The Court May Find Lack of Substantial Similarity On This Motion ..... 1

2. That Dead Rising Is A Video Game Does Not Alter The Analysis ..... 2

3. Delaying The Substantial Similarity Analysis Would Achieve Nothing ..... 3

B. MKR's Claim Cannot Survive The Extrinsic Test. ..... 4

1. Zombies In A Mall Are Not Protectable ..... 4

2. MKR Has Identified No Other Shared Elements That Are Protectable ..... 6

3. MKR's Reliance on *Metcalf* Demonstrates Its Claim Is Fatally Flawed ..... 7

C. The Court Can and Should Take Judicial Notice ..... 9

III. MKR'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW ..... 10

A. MKR's Claim Is An Impermissible End-Run Around The Copyright Act ..... 11

B. Notwithstanding *Dastar*, The Lanham Act Claims Fail ..... 12

1. The Zombie Head Logo Is Not Used By Capcom—At All. ..... 13

2. The Disclaimer is a Nominative Fair Use ..... 13

3. Dead Rising's Title Cannot Infringe MKR's Alleged Marks ..... 14

IV. MKR'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW ..... 15

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A Slice of Pie Productions, LLC, v. Wayans Bros. Entmnt.*,
  392 F. Supp. 2d 297 (D. Conn. 2005) .................................................................................. 12

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
  725 F.2d 521 (9th Cir. 1984) ................................................................................................. 7

*Arts v. Best Buy Enter. Servs. Inc.*,
  2007 U.S. Dist. LEXIS 32060
  (N.D. Cal. Apr. 18, 2007) ................................................................................................. 2, 8

*Bensbargains.net, LLC, v. XPBargains.com*,
  2007 U.S. Dist. LEXIS 60544
  (S.D. Cal. Aug. 16, 2007) ..................................................................................................... 8

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ........................................................................................... 3, 5

*Bethea v. Burnett*,
  2005 WL 1720361 (C.D. Cal. June 28, 2005) ................................................................... 8, 9

*Bosley Med. Inst., Inc. v. Kremer*,
  2004 U.S. Dist. LEXIS 8336 (S.D. Cal. Apr. 29, 2004),
  *rev'd in part on other grounds*, 403 F.3d 672 (9th Cir. 2005) ............................................. 14

*Boyle v. Stephens, Inc.*,
  1998 U.S. Dist. LEXIS 1968 (S.D.N.Y. Feb. 25, 1998) ........................................................ 2

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ............................................................................................. 14

*Cano v. A World of Difference Inst.*,
  1996 U.S. Dist. LEXIS 8161 (N.D. Cal. May 31, 1996) ................................................... 2, 8

*Caron Corp. v. Ollendorff*,
  160 F.2d 444 (2d Cir. 1947) ................................................................................................ 14

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ................................................................................................. 9

*Christianson v. West Pub.*,
  149 F.2d 202 (9th Cir. 1945) ................................................................................................. 1

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) ............................................................................................... 15

*CMSI, Inc. v. Pac. Cycle, Inc.*,
  2006 U.S. Dist. LEXIS 66310
  (W.D. Wa. Sept. 15, 2006) .................................................................................................. 12

*Comedy III Prods., Inc. v. New Line Cinema*,
  200 F.3d 593, 596 (9th Cir. 1999) ....................................................................................... 10

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
  697 F. Supp. 1136 (E.D. Cal. 1987) ...................................................................................... 2

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ......................................................................................................... 11, 12

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Data East USA, Inc. v. Epyx, Inc.*,
  862 F.2d 204 (9th Cir. 1988) ............................................................................................. 2, 5

*Dawn Assoc. v. Links*,
  1978 U.S. Dist. LEXIS 15245
  (N.D. Ill. Sept. 28, 1978) ..................................................................................................... 12

*Felix the Cat Prods., Inc. v. New Line Cinema*,
  2000 U.S. Dist. LEXIS 21763 (C.D. Cal. Apr. 28, 2000) ............................................ 10, 11

*Flynn v. Surnow*,
  70 U.S.P.Q.2d 1231 (C.D. Cal. 2003) ................................................................................... 9

*Funky Films, Inc. v. Time Warner Ent'mt Co.*,
  462 F.3d 1072 (9th Cir. 2006) ....................................................................................... passim

*Funky Films, Inc. v. Time Warner Entm't Co., Inc.*,
  No. 8:03-cv-00964 (C.D. Cal. Feb. 20, 2004) ...................................................................... 3

*HBO, Inc. v. Showtime/The Movie Channel, Inc.*,
  832 F.2d 1311 (2d Cir. 1987) .............................................................................................. 14

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  11 F.3d 1460 (9th Cir. 1993) .......................................................................................... 13, 14

*Jack Russell Terrier Net. of Northern Cal. v. Am. Kennel Club*,
  407 F.3d 1027 (9th Cir. 2005) ............................................................................................. 10

*Jacobsen v. Katzer*,
  2007 U.S. Dist. LEXIS 63568
  (N.D. Cal. Aug. 17, 2007) ................................................................................................... 15

*Lake v. Columbia Broad. Sys.*,
  140 F. Supp. 707 (S.D. Cal. 1956) ........................................................................................ 2

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ............................................................................................ 3, 4

*Marvel Enters., Inc. v. NCSoft Corp.*,
  2005 U.S. Dist. LEXIS 8448
  (C.D. Cal. Mar. 9, 2005) ..................................................................................................... 11

*Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*,
  756 F. Supp. 280 (W.D. La. 1991) ...................................................................................... 14

*Mattel v. MCA Records*,
  296 F.3d 894 (9th Cir. 2002) ............................................................................................... 15

*Mattel v. Walking Mt. Prods.*,
  353 F.3d 792 (9th Cir. 2003) ......................................................................................... 14, 15

*Metcalf v. Bochco*,
  294 F.3d 1069 (9th Cir. 2002) .................................................................................... 4, 7, 8, 9

*Murray v. Cable NBC*,
  86 F.3d 858 (9th Cir. 1996) ................................................................................................. 11

*Nat'l Bus. Dev. Serv., Inc. v. Am. Credit Educ. & Consult., Inc.*,
  2007 U.S. Dist. LEXIS 37639
  (E.D. Mich. May 23, 2007) ................................................................................................. 12

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*,
   198 F. Supp. 2d 474 (S.D.N.Y. 2002) .................................................................................. 14

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ............................................................................................ 13, 14

*Pelt v. CBS, Inc.*,
   1993 U.S. Dist. LEXIS 20464
   (C.D. Cal. Oct. 25, 1993) ....................................................................................................... 10

*Prunte v. Universal Music Group*,
   484 F. Supp. 2d 32 (D.D.C. 2007) ........................................................................................ 11

*Rice v. Fox. Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ................................................................................................. 8

*Rogers* v. *Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) .................................................................................................. 15

*Shwarz v. U.S.*,
   234 F.3d 428 (9th Cir. 2000) ................................................................................................... 9

*Sinicola v. Warner Bros., Inc.*,
   948 F. Supp. 1176 (E.D.N.Y. 1996) ....................................................................................... 4

*Thomas v. Walt Disney Co.*,
   2008 U.S. Dist. LEXIS 14643
   (N.D. Cal. Feb. 14, 2008) ........................................................................................................ 1

*Turtle v. Castle Records, Inc.*,
   2004 U.S. Dist. LEXIS 29124
   (N.D. Cal. June 1, 2004) ....................................................................................................... 12

*TV Globo Ltd. v. Kelly Broad. Sys.*,
   2001 U.S. Dist. LEXIS 19802
   (S.D.N.Y. Nov. 30, 2001) ..................................................................................................... 14

*United States v. Pang*,
   362 F.3d 1187 (9th Cir. 2004) ................................................................................................. 9

*Woodard v. Jackson*,
   2004 U.S. Dist. LEXIS 6292
   (S.D. Ind. Mar. 25, 2004) ................................................................................................ 11, 15

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ......................................................................... passim

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 13

Fed. R. Civ. P. 56(f) ....................................................................................................................... 3

Fed. R. Evid. 901 ........................................................................................................................... 9

**OTHER AUTHORITIES**

4 Nimmer on Copyright §1303[D], at 13-92 ................................................................................. 4

## I. INTRODUCTION

MKR's Opposition dodges the determinative issue posed by this motion: whether DOTD and *Dead Rising* are substantially similar under the Ninth Circuit's objective extrinsic test. Crucially, MKR neither disputes that both works are properly before the Court nor that Capcom accurately described their contents. MKR ignores that the works are fundamentally different in nearly all of the elements that must be considered in deciding whether two dramatic works are objectively similar: plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. Instead, MKR clings to the untenable position that the shared idea of "zombies in a mall" and a handful of random similarities scattered throughout the works (in no particular order) which are driven by that idea give rise to a copyright claim. As shown by the wealth of controlling authority Capcom cited (utterly ignored by MKR), it cannot. This Court should join the numerous other courts in this Circuit that have dismissed similarly baseless claims on the pleadings.

MKR's Lanham Act claim is similarly deficient. Alleged "taking" of the *content* of copyrightable works cannot support a trademark claim as a matter of law. MKR's three straws—the Zombie Head (which Capcom does not use), the word "dead" (which cannot support a claim), and the disclaimer (which is nominative fair use)—all fail. And once MKR's copyright and trademark claims fall, so do the state law claims.

## II. MKR'S COPYRIGHT CLAIM FAILS AS A MATTER OF LAW

### A. This Court Can And Should Dismiss This Claim With Prejudice Now.

#### 1. The Court May Find Lack of Substantial Similarity On This Motion.

There is no question copyright claims can be dismissed on a motion to dismiss. *Christianson v. West Pub.*, 149 F.2d 202, 203 (9th Cir. 1945) ("ample authority for holding. . . non-infringement can be determined on a motion to dismiss"); *Funky Films, Inc. v. Time Warner Ent'mt Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) ("substantial similarity may often be decided <u>as a matter of law</u>") (emphasis added). In the past two years alone, at least three California federal courts have dismissed copyright claims on the pleadings after comparing the works and finding they were not substantially similar under the extrinsic test. *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007); *Thomas v. Walt Disney Co.*, 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008);

*Id. Arts v. Best Buy Enter. Servs. Inc.*, 2007 U.S. Dist. LEXIS 32060 (N.D. Cal. Apr. 18, 2007). This is not limited to courts in this Circuit.[1] As one court stated in dismissing a copyright claim:

> [T]he works themselves supersede and control contrary allegations and conclusions, or descriptions of the works contained in the pleadings. If after examining the works themselves, the Court determines that there is no substantial similarity, then the plaintiff here can prove no facts in support of his claim which would entitle him to relief—the standard for dismissal under Rule 12(b)(6) . . .

*Boyle v. Stephens, Inc.*, 1998 U.S. Dist. LEXIS 1968, *11-12 (S.D.N.Y. Feb. 25, 1998).

### 2. That Dead Rising Is A Video Game Does Not Alter The Analysis.

MKR concedes DOTD and *Dead Rising* are properly before the Court. Opp. at 21. MKR nonetheless urges the Court to disregard *Dead Rising*, ostensibly because the "content" of the game cannot fully be ascertained at this stage. Opp. at 5, 24. Nonsense.[2]

To the extent MKR is suggesting *the Court* cannot adequately review *Dead Rising* since it is an interactive game, this argument must be rejected. MKR does not and cannot assert that a player's skill level or choices *change* the storyline, plot, theme, characters, settings, etc.; they vary only in the extent to which they are revealed to the user. True, the difference in medium does make it more difficult for MKR to prove a video game is substantially similar to a fixed film inasmuch as plot and theme, and the importance of various characters, settings, etc. have different significance in a game than a movie. But that is the very nature of a video game—players decide how their time is spent. For example, a player might spend a lot of time simply slaying zombies without interacting with other survivors or trying to learn the cause of the outbreak.

MKR's assertion that there may be additional similarities between the works that *it* has not yet found is preposterous. MKR has had *over two years* since *Dead Rising* was released to

---

[1] This is not a recent trend. *See Cano v. A World of Difference Inst.*, 1996 U.S. Dist. LEXIS 8161 (N.D. Cal. May 31, 1996); *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136 (E.D. Cal. 1987); *Lake v. Columbia Broad. Sys.*, 140 F. Supp. 707 (S.D. Cal. 1956).
[2] MKR inaccurately suggests the extrinsic test is ill-suited to a comparison of visual works as they may contain "visual similarities" that are overlooked by that test. *See* Opp. at 7, fn. 10. Such similarities are obviously contemplated by the test (*e.g.*, setting, characters) and MKR cites no authority for its argument. None exists. Indeed, Judge Hamilton recently applied the 8 factors of the extrinsic test to two visual works on a motion for judgment on the pleadings and—applying the precise test MKR asserts should not be applied—easily concluded the works were not substantially similar as a matter of law. *Id. Arts*, 2007 U.S. Dist. LEXIS 32060, at * 23-48; *see also Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207-209 (9th Cir. 1988) (reversing finding that defendant's video game infringed plaintiff's video game as all allegedly similar elements flowed from the *idea* of a martial arts karate combat video game, and thus had to be filtered out under the extrinsic test).

discover all purported similarities and six weeks to prepare its Opposition. If any similarities between the works existed, MKR would have found them by now. Its claim that it needs discovery to do so (Opp. at 24) is belied by the fact that (a) one need only play the game to discover its content; and (b) in the *seven months* since this case was filed, MKR has served ***no discovery***.

The same plea was <u>*squarely rejected*</u> in *Zella* where plaintiffs argued the court could not conclude on a motion to dismiss that defendants' television series was not substantially similar as only some episodes were before the court, and others "may contain infringing content." *Zella*, 529 F. Supp. 2d at 1132. The court refused to issue "a free pass to summary judgment." Plaintiffs' failure to allege their best facts could not prevent the court determining the works were not similar. *Id.*; s*ee also Funky Films*, 462 F.3d at 1076 (finding as a matter of law no substantial similarity after reviewing only three episodes of *Six Feet Under*). This rationale is more compelling here, as all of *Dead Rising* is before the Court, leaving nothing for speculation or discovery.

### 3. Delaying The Substantial Similarity Analysis Would Achieve Nothing.

Notwithstanding MKR's vague claim to the contrary, nothing would be gained by delaying the analysis of substantial similarity until summary judgment. The works are properly before the Court and they are the *only* evidence needed to determine if the works are substantially similar under the extrinsic test. *See Funky Films*, 462 F.3d at 1076 (on summary judgment, court looked only at the works and affirmed denial of request for additional discovery);[3] *Berkic v. Crichton*, 761 F.2d 1289, 1292-1294 (9th Cir. 1985) (summary judgment analysis limited to a review of the works themselves); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (same).

MKR's request for discovery rings hollow; just as in *Funky Films*, the Court needs no other evidence for its analysis under the extrinsic test (and MKR makes no effort to comply with the Rule 56(f) requirement that it explain why it cannot present facts needed for its opposition). Thus, the summary judgment analysis would be *exactly the same*—the only difference being that the parties and the Court will have spent substantially more time and money to resolve this issue.

---

[3] The district court found reliance on the parties' expert reports "unnecessary" and that the works were not substantially similar under the extrinsic test based on its own "independent review and careful evaluation" of the works, noting courts routinely disregard opinions of experts in this analysis. *Funky Films, Inc. v. Time Warner Entm't Co., Inc.*, No. 8:03-cv-00964 (C.D. Cal. Feb. 20, 2004).

-3-

CAPCOM'S REPLY ISO MOTION TO DISMISS                                   CASE NO. CV-08-0904 RS

### B. MKR's Claim Cannot Survive The Extrinsic Test.[4]

The entirety of MKR's argument concerning the extrinsic test is an acknowledgment that it exists (Opp. at 6) and a bald conclusion that MKR has satisfied it. *Id*. at 9.[5] MKR does not even *discuss* this test's requirements, much less respond to the extensive analysis showing the works are completely different under *every single factor* (Opening Brief In Support of Capcom's Motion Dismiss ("O.B.") at 14-20), compelling the conclusion that they are not substantially similar.[6] Instead, MKR makes the incredible assertion that "zombies in a mall" is protectable expression, points to a few other random similarities between the works and argues they are protectable too, and even if they are not, MKR has still stated a claim under *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002). MKR's theory fails on every level.[7]

#### 1. Zombies In A Mall Are Not Protectable.

MKR acknowledges, as it must, that copyright law does not protect ideas from copying. In an attempt to avoid this fundamental tenet, it argues DOTD's idea is actually "rampant, mindless consumerism" which is *expressed* though humans battling zombies in a mall. Opp. at 6-7, 12.

First, "consumerism" is, if anything, the *theme* of DOTD—and since MKR does not even

---

[4] Capcom is puzzled by MKR's argument that it only told "half the story" in describing the substantial similarity test because there is an intrinsic component that may not be evaluated on this motion. *See* Opp. at 6. Capcom neither failed to mention the intrinsic test nor argued that it could be applied here, and does not so argue now. *See* O.B. at 8. Rather, it contends that because MKR cannot satisfy the extrinsic test, it cannot show substantial similarity as a matter of law.

[5] MKR argues that Capcom knowingly copied DOTD. Opp. at 4, 8. Whether this is true is irrelevant to the only issue presented here—whether DOTD and *Dead Rising* are substantially similar. Absent substantial similarity, there can be no infringement—end of story. O.B. at 7, fn. 7; 4 Nimmer on Copyright §1303[D], at 13-92 ("no matter how steeped in plaintiff's work defendant may have been, if the resulting product is non-actionable as a matter of law, then the absence of substantial similarity that must underlie every successful claim still dooms the infringement suit"); *Sinicola v. Warner Bros., Inc.*, 948 F. Supp. 1176, 1190 (E.D.N.Y. 1996) (that defendant's film may have been an adaptation of plaintiff's novel had no bearing on substantial similarity).

[6] The extrinsic test has two steps: (1) filtering out of unprotectable content; and, (2) comparison of the works, if any similarities remain, using the 8 factors described in *Funky Films*. O.B. at 8-9.

[7] MKR contends it is entitled to "its day in court" because the "ordinary observer" believes *Dead Rising* infringes DOTD. Opp. at 13-14. But the reaction of the ordinary observer is irrelevant—it is part of the subjective, *intrinsic* test, which never comes into play if the court concludes, as it must here, the works are not substantially similar under the *extrinsic* test. *Funky Films*, 462 F.3d at 1077; *see also Zella*, 529 F. Supp. 2d at 1133 n.8 (a plaintiff failing the extrinsic test "'necessarily loses'" since "a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests'") (quoting *Funky Films*, 462 F.3d at 1077); *Litchfield*, 736 F.3d at 1357 (response of "ordinary reasonable person" and similarities between overall "concept and feel" considered only under intrinsic test). In fact, MKR *admits* the ordinary observer's reaction is part of the intrinsic test (Opp. at 6:19-24), as it should be, as the extrinsic test serves the important function of filtering out matters the average person may not understand are unprotectable under the Copyright Act.

-4-

claim consumerism is the theme of *Dead Rising* (it plainly is not), MKR's contention confirms the works are critically different in yet another objective component of expression under the extrinsic test. O.B. at 17. But if we take MKR at its word and deem consumerism the idea, its claim fails because the extrinsic test requires similarity of **both** *ideas* and *their expression*. *See Data East*, 862 F.2d at 207 ("plaintiff must first show that the ideas are substantially similar, [although] the ideas themselves are not protected by copyright and therefore, cannot be infringed"). MKR's assertion that DOTD rests on an idea that is different from the idea of *Dead Rising* dooms its claim.

In asserting that DOTD "expresses" its idea of consumerism through the motif of humans battling zombies in a mall, MKR fails to see that a work can contain more than one idea. The Court is not without guidance in deciding whether "humans battling zombies in a mall" is protectable—the cases (which MKR declines to address) clearly answer that combining such extraordinarily general plot ideas with a commonly encountered location is not the kind of "creativity" that is rewarded with a copyright monopoly.[8] As the Ninth Circuit has explained:

> At a very high level of generality, the works do show a certain gruesome similarity. Both deal with criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants . . . both works take their general story from the adventures of a young professional who courageously investigates, and . . . exposes, the criminal organization. <u>But this degree of similarity between the basic plots of two works cannot sustain a plaintiff's claim that the two works are 'substantially similar.' No one can own the basic idea for a story. General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind.</u>

*Berkic*, 761 F.2d at 1292 (emphasis added).[9]

MKR also ignores another fundamental problem with its claim: it did not originate the concept of humans battling zombies—*which the Court need look no further than the exhibits to MKR's Counterclaim to confirm*. *See* Ex. H at 9, 11, 17; A at 1, B at 1, G at 4, H at 9, 17. The exhibits explain that DOTD is the sequel to *Night of the Living Dead* (which MKR does not own),

---

[8] If not the case, then the first cowboy-gunslinger film would have monopolized that genre. By MKR's logic, films as varied as *High Noon* and *Shane* would be deemed to share the same alleged "expression": citizens facing off against outlaws in the old West. One could, likely, augment this "similarity" by extracting a few screenshots of shootouts and holdups from any two such films, no matter how disparate in plot and characterization they actually are, to "prove" that *High Noon, Shane, Unforgiven,* and most any other western must have been copied from the earliest one.

[9] In *Funky Films*, the Ninth Circuit reiterated that in applying the extrinsic test, the "court 'compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters.'" *Funky Films*, 462 F.3d at 1077 (quoting *Berkic*, 761 F.2d at 1293).

the film that "formulated" the "zombie apocalypse" genre (Ex. H at 17) and is "punctuated by such shocking images as zombies tearing human flesh from limbs." Ex. A at 1. They further explain that *Dead Rising* is one of many video games in the "zombie-slaying genre," including Capcom's *Resident Evil* series. Ex. H at 6, 14. Thus, the Court need look only to the pleadings to conclude these shared elements are not original to MKR. This alone is fatal to its claim. O.B. at 12-13.

### 2. MKR Has Identified No Other Shared Elements That Are Protectable.

Even now, MKR has not identified a single *protectable* element that DOTD and *Dead Rising* share. *Not one*. Instead, without bothering to discuss them in the context of the extrinsic test, MKR identifies a handful of alleged similarities, nearly all of which Capcom has already shown do not exist or are not protectable and must be filtered out. O.B. at 13-20; *Funky Films*, 462 F. 3d at 1077 (in applying extrinsic test, court "must take care to inquire only whether the *protectable elements*, standing alone, are substantially similar") (emphasis in original).

To reiterate, none of the alleged similarities MKR identifies are protectable:[10]

| MKR's Claimed Similarity | Capcom's Response |
|---|---|
| Blood, violence and gore | Unprotectable idea; *scenes a faire*; stock element of genre |
| Themes of "mall culture" and "consumerism" | Comparison of works shows no similarity of themes; claimed theme too abstract to merit copyright protection |
| Comedy | Unprotectable idea; *scenes a faire*; stock element of genre |
| Use of Musak | Unprotectable idea; *scenes a faire*; stock element of genre |
| Humans battle zombies in a mall accessed via helicopter during zombie outbreak | Basic plot ideas unprotectable; stock concept of zombie genre unoriginal to MKR |
| Both works "set in motion" by helicopter that takes characters to | Part and parcel of unprotectable plot; *scenes a faire*; idea/expression merger; stock element of genre; comparison of |

---

[10] MKR submits screenshots to the Rupp Declaration without explaining their significance in its Opposition. In any event, the screen shots demonstrate that the alleged similarities—a control room (Ex. B), stairwell (Ex. C), zombies at a glass window (Ex. D), a helipad (Ex. F), a two-story mall (Ex. G), a parking lot (Ex. I), and an HVAC unit (Ex. J)—are no more than scenes naturally associated with the unprotectable idea of zombies in a mall. Indeed, irrelevant as these alleged samples are—deliberately stripped of their actual meaning in the context of the film, which would include movement, dialog, music and their place in the unfolding plot—if anything, these prove the emptiness of MKR's claim. Yes, for one moment in a full-length film and in a long and intricate video game, male characters stand in front of some sort of control panel. So what? But even as shown in Ex. B, the characters do not look the same, the control panels are dramatically different, and the overall rooms are different—let alone what happens there, which MKR does not trouble to explain. Equally devoid of meaning, MKR shows two entirely different stairs (Ex. C), sets of zombie hands reaching upward (Ex. D), different helipads and mall second stories, etc. These photos would be epitomes of isolated claimed similarities, but for the fact—manifested in the photos themselves—that even these isolated examples show substantially *different* depictions.

-6-

| | |
|---|---|
| the mall | works shows significant differences in use of helicopter |
| Mall is "rural" and bi-level, with gun store and helipad | Part and parcel of unprotectable plot; setting too abstract to merit copyright protection; *scenes a faire*; comparison of works shows significant differences between malls; idea/expression merger; idea unoriginal to MKR |
| Cynical journalist with short brown hair and leather jacket who tries to figure out cause of zombie outbreak | Comparison of works shows this to be false and no similarity between any other characters; cynical journalist a stock character; *scenes a faire*; dozens of other characters in both works that have no resemblance to each other |
| National Guardsmen patrol the mall's environs | Basic plot ideas unprotectable; stock concept of genre; comparison of works shows this to be false |
| Dialogue reference to "hell" | Lines dissimilar; a short phrase cannot infringe; *scenes a faire* |
| Many zombies wear plaid shirts | Stock concept of zombie genre unoriginal to MKR |
| Creative use of items to kill zombies | Unprotectable idea; *scenes a faire*; stock element of genre; comparison of works shows very different items used |
| Motorcycle gang members | Unprotectable idea; comparison of works shows this to be false and no similarity |

MKR claims the merger and *scenes a faire* doctrines do not apply unless there is only one way to express an idea; however the case MKR cites clearly states the merger doctrine applies when there is a "*limited* number of ways to express a given idea." *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 525 (9th Cir. 1984) (emphasis added). This is *precisely* what Capcom argued. O.B. at 13-14. MKR also fails to address the myriad cases Capcom cited that show the majority of the alleged similarities—violence and gore, creative use of items to kill zombies, a journalist, a helicopter, and a reference to "hell"—are all *scenes a faire* flowing naturally from the idea of humans battling zombies in a mall. This failure is not surprising, since they eliminate any doubt these elements are not protectable. O.B. at 11-12, 16, 18-20.[11]

### 3. **MKR's Reliance on *Metcalf* Demonstrates Its Claim Is Fatally Flawed.**

Essentially conceding, as it must, its claim is not based on protectable similarities, MKR resorts to arguing it nonetheless has stated a claim because the Ninth Circuit has held "the particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element." *Metcalf*, 294 F.3d at 1074. MKR is, yet again, dead wrong.

By no stretch of the imagination can *Metcalf* apply here. The court's holding in that case

---

[11] MKR's argument that this Circuit applies the *scenes a faire* analysis only at the infringement stage is nonsensical. Opp. at 12. MKR forgets that what Capcom asks the Court to do is apply the extrinsic test to determine that, as a matter of law, *Dead Rising* does not infringe DOTD.

-7-

was based on both the "striking similarities" and the "common patterns" between a "significant" number of unprotectable elements relating largely to the characters and their interactions with each other (a key component of the extrinsic test, *see* fn. 8, *infra*). *Metcalf*, 294 F.3d at 1074-75. Thus, the same elements were not only expressed in the same way, but strung together in the same *sequence*. *Id.*[12]  Here, in stark contrast, MKR has not identified any common sequence, much less any striking similarities. In fact it has done the exact opposite: identified in no particular order a number of general similarities relating largely to the settings—*i.e.*, humans trying to survive in a rural mall with "action taking place" throughout the works in various locations like the mall's rooftop. Opp. at 9. Nor could MKR do so—as already shown, the works have radically different sequences of events (and plots, dialogue, mood, pace, characters, etc.). O.B. at 3-6, 14-15.

Moreover, since *Metcalf*, courts in this Circuit consistently have rejected copyright claims based on a number of similar, but unprotected elements between the works. *Zella*, 529 F. Supp. 2d 1124, 1138 (observing "courts have been reluctant to expand this concept beyond the clear-cut case presented in *Metcalf*"); *Id. Arts*, 2007 U.S. Dist. LEXIS 32060, *80 ("in *Metcalf*, the 'many' generic similarities and patterns present in the works were much more voluminous and specific than in this case"); *Bethea v. Burnett*, 2005 WL 1720361, *14-15 (C.D. Cal. June 28, 2005) ("[w]hen taken separately or as a whole, the common elements of *C.E.O.* and *The Apprentice* simply do not allow for a reasonable inference that the works are substantially similar in expressive content"); *see also Rice v. Fox. Broad. Co.,* 330 F.3d 1170, 1178-89 (9th Cir. 2003).

Courts agree that, to satisfy the extrinsic test based on a shared sequence of unprotectable elements, the alleged similarities must be <u>nearly identical</u>—a much higher standard. *Id. Arts*, 2007 U.S. Dist. LEXIS 32060, *51 (work needs to be "plainly identical" to plaintiff's work); *Cano*, 1996 U.S. Dist. LEXIS 8161, *31 (combination of unprotectable elements only protected from "virtually identical copying of the selection, arrangement, and expression" of those elements); *see also Bensbargains.net, LLC, v. XPBargains.com*, 2007 U.S. Dist. LEXIS 60544, *11 (S.D. Cal. Aug. 16, 2007). MKR cannot possibly satisfy this standard. *See* O.B. at 14-20.

---

[12]  MKR's description of the "similarities" is also false in many respects. *Dead Rising* does not feature "motorcycle gang members" (their invasion being a pivotal scene in DOTD); nor do any characters in DOTD make any effort to understand the cause of the zombie outbreak.

-8-

Finally, MKR utterly ignores the cases Capcom cited showing courts uniformly reject claims that, like this one, are based on lists of similarities throughout the works (*i.e.*, not in the same sequence or pattern), *even when (as is not the case here) the works share the same basic plot*. *See* O.B. at 11; *see also Bethea*, 2005 WL 1720631, *14 (rejecting *Metcalf* argument: "similarities to which Plaintiffs cite are random and have no concrete pattern or sequence in common"); *Flynn v. Surnow*, 70 U.S.P.Q.2d at 1231, 1238 (C.D. Cal. 2003) (plaintiff's cited similarities "are randomly scattered throughout the works and have no concrete pattern or sequence in common"); *see also Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) (random similarities throughout the 280-page work could not support copyright claim).[13]

### C.     The Court Can and Should Take Judicial Notice.

While it need not do so to rule in Capcom's favor on this motion, the Court can and should take judicial notice of *Dead Rising*'s script, the publicly available zombie-themed works attached to Capcom's RJN, and the generic elements of those works.[14] Contrary to MKR's assertion, consideration of these matters would not require the Court to convert the motion to one for summary judgment (Opp. at 24); it is well-settled that judicially noticeable matters may be considered on a motion to dismiss. *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

**Dead Rising Script**: The Script *is* the work at issue, no less than its embodiment on a disk, and the Court can consider it for the same reasons it can consider the disk. RJN at 2-5. MKR's argument that the Court should refuse to consider the Script because it was not properly authenticated and its contents cannot be verified is baseless. The Niida Declaration included all authenticating information (*see* Fed. R. Evid. 901; *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004), and the Script's conformity to the game can be confirmed simply by playing it.

**Publicly Available Zombie-Themed Works**: MKR does not seriously contend the movies

---

[13] This rationale applies here. DOTD is 127 minutes long and *Dead Rising* can be played for up to six hours per game, yet MKR has alleged a handful of similarities between them. Opp. at 4-5.
[14] The Script is offered merely to make the Court's review of *Dead Rising* easier. Likewise, the zombie-themed works were submitted to show that certain elements within this genre are generic, *i.e.*, not original to MKR. Lack of originality is one of many separate reasons MKR's claim fails. As a matter of law, the lack of protection for ideas, *scenes a faire*, and ideas merged with expression, and the fundamental dissimilarity of the works under every factor of the extrinsic test, are each independent reasons why MKR's claim fails. Thus, denial in whole or in part of Capcom's request for judicial notice presents no hurdle to the Court's ability to grant this motion.

-9-

and video games attached to Capcom's RJN are not generally known or readily available within this jurisdiction. Instead its real gripe appears to be Capcom's *characterization* of the content of the films and games and the accompanying Wikipedia references provided for the Court's convenience. The Court need not accept these; the actual contents of the works—which are not subject to dispute—are easily ascertainable from the physical copies attached to the RJN.

**Generic Elements of Zombie-Themed Works**: Capcom cited ample authority showing the propriety of the Court's judicial notice of generic elements in the genre at issue. RJN at 13-14. MKR ignores *Zella*—a directly-on-point, recent case holding on a motion to dismiss that it was appropriate to do so where such elements are generally known and easily verifiable. 529 F.2d at 1129; *see also Pelt v. CBS, Inc.*, 1993 U.S. Dist. LEXIS 20464, *7-8, n.3 (C.D. Cal. Oct. 25, 1993) (same). MKR's only response is that it "vigorously denies" the identified elements are generic. Opp. at 24. But MKR cannot deny these elements are typical in zombie-themed works. It is beyond dispute that such elements are common, a "fact" verified by viewing any of the many publicly available zombie-themed works. The Court should decline MKR's invitation to put its head in the sand.

## III.  **MKR'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW**[15]

At the heart of all of MKR's Lanham Act claims is the suggestion that consumers are likely to be confused into believing MKR (more accurately, George A. Romero who is not a party to this case and is not a holder of any substantive rights at issue) authored or authorized *Dead Rising* because consumers view MKR as the source of the *idea* of zombies in a shopping mall. But consumer confusion is the essential element of the Lanham Act, and—as the Supreme Court has made clear—it must arise from a consumer's misunderstanding regarding *the source of the tangible*

---

[15] The Opposition raises, *for the first time*, that Capcom "misappropriate[s] MKR's trademark rights" by depicting some zombies in the game clothed in plaid shirts. Opp. at 16. This allegation cannot withstand a motion to dismiss as it appears nowhere in the Counterclaim. *See generally* Counterclaim; *Jack Russell Terrier Net. of Northern Cal. v. Am. Kennel Club*, 407 F.3d 1027, 1035 (9th Cir. 2005). Moreover, even assuming the "PLAID BOY" character is definitive enough to obtain trademark protection, use of such a character *within* a visual work is not trademark infringement as such a finding conflicts with copyright law. *See Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 1999) (film's unauthorized use of iconic character images not a trademark violation, instead issue under the "dominion of copyright law"); *Felix the Cat Prods., Inc. v. New Line Cinema*, 2000 U.S. Dist. LEXIS 21763 (C.D. Cal. Apr. 28, 2000) (follows *Comedy III*; trademark claims based on use of cartoon character within a film dismissed).

-10-

*goods* and *not regarding the source of the ideas contained in them*. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-32 (2003). Where, as here, the pleadings clearly show the mark holder cannot establish this all important factor—either because of the intersection of trademark and copyright law, the obvious dissimilarity of the marks, the mark's non-trademark use or the First Amendment—likelihood of confusion can be decided as a matter of law, and dismissal required. *See, e.g., Murray v. Cable NBC*, 86 F.3d 858, 860-861 (9th Cir. 1996) (likelihood of confusion can be determined "as a matter of law"; dismissal affirmed); *Felix the Cat Prods., Inc. v. New Line Cinema*, 2000 U.S. Dist. LEXIS 21763, *10 (C.D. Cal. Apr. 28, 2000) (dismissing claim as an end run around copyright law); *Marvel Enters., Inc. v. NCSoft Corp.*, 2005 U.S. Dist. LEXIS 8448, *11-12 (C.D. Cal. Mar. 9, 2005) (dismissing infringement claim as "the *word* 'Statesman' is unlikely to cause confusion with the *words* 'Captain America'") (emphasis in original); *Woodard v. Jackson*, 2004 U.S. Dist. LEXIS 6292, *24-25 (S.D. Ind. Mar. 25, 2004) (dismissing on First Amendment grounds claim that the title of defendant's work infringed).

### A.    MKR's Claim Is An Impermissible End-Run Around The Copyright Act.

Two legal stakes puncture the heart of MKR's allegation that Capcom caused confusion since consumers recognize DOTD, and its writer and director Mr. Romero, as the source of the notion of zombies in a mall, and hence are "confused" regarding the source of Capcom's game.

First, the source of the confusion, as alleged by MKR, is not that consumers are likely to believe MKR is the source of the game itself, but rather that consumers recognize MKR (or Mr. Romero) as the source of *ideas, concepts, and substantive content* embodied in the game. *See* Counterclaim ("CC") ¶¶ 41, 42 (alleging "extensive use" of "major elements" of DOTD and marketing the game to "highlight such elements," causing consumer confusion as to *Dead Rising*'s affiliation with DOTD/Romero/MKR); *see also* ¶¶ 17, 18. This is fatal to MKR's claim as the origin of goods, within the meaning of the Lanham Act, "refers to the producer of the tangible goods offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar,* 539 U.S at 37; *see also Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 41 (D.D.C. 2007) (claim dismissed; use of plaintiff's song titles was a question of *authorship* not *origin*); *Turtle v. Castle Records, Inc.*, 2004 U.S. Dist. LEXIS 29124, *11-15 (N.D. Cal. June

-11-

1, 2004) (granting motion to dismiss); *Nat'l Bus. Dev. Serv., Inc. v. Am. Credit Educ. & Consult., Inc.*, 2007 U.S. Dist. LEXIS 37639, *9-10 (E.D. Mich. May 23, 2007).

Second, the claim as alleged by MKR is really that *Mr. Romero's* alleged trademark rights, not any rights owned by MKR, have been violated by Capcom.  But Mr. Romero is not a party to this suit, and MKR has not alleged (and cannot allege) that he has assigned his intellectual property rights in his name to MKR.  This is confirmed by MKR's repeated reference to Mr. Romero, the writer and director of the entire *Living Dead* series, including its contentions that Mr. Romero's name is a source identifier, and alleging Capcom seeks to "trade-off the fame of Mr. Romero." Opp. at 16; *see also* CC ¶ 41 (alleging Capcom seeks to lure fans of Mr. Romero).  Indeed, as MKR admits, DOTD (and *Night of the Living Dead*) have been recognized as having secondary meaning, but "**_with Romero as their source_**"—not MKR.  *Dawn Assoc. v. Links*, 1978 U.S. Dist. LEXIS 15245, *15 (N.D. Ill. Sept. 28, 1978) (emphasis added); Opp. at 15.[16]

MKR tries to avoid *Dastar* by disavowing, for the purpose of the Lanham Act claim, the taking of DOTD's content.  Opp. at 16:2-8.  But having incorporated the copyright claims by reference, they are part of its Lanham Act claim. *See* CC ¶ 40.  This is not just a matter of an incorporation-by-reference "formality" within the pleading; the essence of the claim is precisely what *Dastar* unambiguously rejects: confusion claims premised on who "came up with the idea for the product."  *Dastar*, 539 U.S. at 32-33; *see also CMSI, Inc. v. Pac. Cycle, Inc.*, 2006 U.S. Dist. LEXIS 66310, *13 (W.D. Wa. Sept. 15, 2006) (the Lanham Act does not "protect a producer simply because it was the first to create, develop, or manufacture a product"); *A Slice of Pie Productions, LLC, v. Wayans Bros. Entmnt.*, 392 F. Supp. 2d 297, 313 (D. Conn. 2005) (granting motion to dismiss; while purchasers of a film might care about the identify of the creator of film's concept, the Lanham Act "does not apply" because it would conflict with copyright law).

**B.    Notwithstanding *Dastar*, The Lanham Act Claims Fail.**

---

[16] The disconnect between MKR's claim and the Lanham Act is underscored by the fact that DOTD is but one of five movies in a series.  MKR's trademark rights are limited ***only*** to the title of the second, "George A. Romero's Dawn of the Dead."  Yet all of the movies contain the appellative "George A. Romero's."  *See* RJN Exs. 14, 17, 19.  All contain the word "dead," as does the parody zombie movie "Shaun of the Dead."  *Id.* at 23.  All of these titles "connote the same meaning of zombies awakening." Opp. at 17:8-9.  At best, MKR's alleged confusion relates to whether or not Mr. Romero is the "source, origin or [sponsors]" of *Dead Rising*—not MKR.

-12-

### 1. The Zombie Head Logo Is Not Used By Capcom—At All.

MKR attempts to plead around the Copyright Act by staking its claim on the Zombie Head mark. But a comparison of MKR's mark and the *Dead Rising* packaging precludes any claim that Capcom imitated the Zombie Head logo—it simply is not there. *Compare* Ex. D *with* Ex. F. MKR cannot meet the initial threshold requirement of Section 32 of the Lanham Act that the imitator of the registered mark be "**use[d].**" 15 U.S.C. § 1114.

### 2. The Disclaimer is a Nominative Fair Use.

MKR's claim that a disclaimer can, *by itself*, generate consumer confusion is unbelievable. MKR cites no case, and we are aware of none, where a pre-litigation disclaimer disavowing any connection between the goods at issue, without any other use of the mark, gave rise to a trademark claim. There may be some uncertainty about the circumstances in which such disclaims can dispel confusion, in those circumstances in which marks, trade dress and other indicia are very likely to generate confusion. But no case has ever held a consumer was likely to be so confused by a disclaimer such that the disclaimer was seen as an endorsement by the named disclaimed source.

In contrast, under well-settled Ninth Circuit authority, courts may determine *as a matter of law* that this type of use is a nominative fair use. *New Kids on the Block v. News Am. Pub.*, *Inc.,* 971 F.2d 302, 306 (9th Cir. 1992); *see also In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1466-67 (9th Cir. 1993) (affirming Rule 12(b)(6) dismissal of Lanham Act claim on fair use grounds). As the Ninth Circuit has explained, where, as here, plaintiff's trademark is used "to describe the plaintiff's product," it is a non-actionable nominative fair use so long as the product is "one not readily identifiable without use of the trademark . . . only so much of the mark or marks may be used as is reasonably necessary . . . [and] the user must do nothing [to] suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308. Capcom easily meets all three elements of this test. <u>First</u>,[17] how else could Capcom refer to DOTD than by its title, particularly with so many other zombie films? *Id.* at 306-307 (noting a "reference

---

[17] MKR confuses the first nominative fair use element with the parallel requirement for a classic fair use. *See* Opp. at 18 (asserting Capcom had no need to use the movie's title to describe *Dead Rising*). In a classic fair use analysis, use of a plaintiff's mark is allowed to describe an inherent quality of ***defendant's*** good. Under nominative fair use, plaintiff's mark is used to refer to ***plaintiff's*** product—here DOTD. *See Walking Mt.*, 353 F.3d at 809 (noting distinction).

-13-

CAPCOM'S REPLY ISO MOTION TO DISMISS    CASE NO. CV-08-0904 RS

to a large automobile manufacturer based in Michigan would not differentiate among the Big Three"). *Second*, there is no shorter way to reference DOTD. To do as MKR suggests (Opp. at 18:7-10) and drop Mr. Romero's name would instead identify the Remake (in which MKR has no rights). <u>Third</u>, nothing about using a mark *in a disclaimer* denying affiliation gives rise to confusion. The assertion that such use "suggest[s] sponsorship or endorsement" by MKR is silly.[18] For example, in *Mattel v. Walking Mt. Prods.*, the Ninth Circuit found that the use of a Barbie figure in a parody did not indicate sponsorship noting "this element does not require that the defendant make an affirmative statement that their product is not sponsored by the plaintiff." 353 F. 3d 792, 811 (9th Cir. 2003); *see also Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1154-1155 (9th Cir. 2002) (third element met, *even in the absence of a disclaimer*, as advertisements at issue did not affirmatively claim affiliation with the plaintiff). Having made such an affirmative statement, Capcom meets all three *New Kids* elements. MKR's claim premised on the disclaimer should be dismissed. *In re Dual Deck*, 11 F.3d 1460, 1466-67.

### 3. **Dead Rising's Title Cannot Infringe MKR's Alleged Marks.**

Nor can MKR bar all other zombie-themed works from titular references to zombies. It is not enough that "both titles share the term "DEAD" and connote . . . zombies awakening." Opp. at 17. "It is well-settled that 'when less than the whole of a plaintiff's mark is used by a defendant . . . .to sustain a charge of infringement, it must appear that the part . . . taken identifies the owner's product without the rest.'" *Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486 (S.D.N.Y. 2002) *quoting Caron Corp. v. Ollendorff*, 160 F.2d 444, 445 (2d Cir. 1947). In light of the *Living Dead* series of films, "dead" has **no source identifying function**.

Additionally, titles receive substantial First Amendment protection. *Mattel v. MCA*

---

[18] The disclaimer cases cited by MKR do not change this result. Opp. at 17. None discuss use of a disclaimer as a prophylactic measure. Instead, they address the effectiveness of a disclaimer *at the injunction stage* where the defendant has been already been found (or is likely to be found) to *independently infringe the plaintiff's marks. See e.g., HBO, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F. 2d 1311, (2nd Cir. 1987). Indeed, the Ninth Circuit's discussion of disclaimers in *Cairns*, 292 F. 3d at 1154-1155, and *Walking Mt.*, 353 F. 3d at 811, indicate that Capcom's use complies with the *New Kid* test. In any event, courts regularly uphold disclaimers as effective counterweights to confusion. *See, e.g., Bosley Med. Inst., Inc. v. Kremer,* 2004 U.S. Dist. LEXIS 8336 (S.D. Cal. Apr. 29, 2004), *rev'd in part on other grounds*, 403 F.3d 672 (9th Cir. 2005); *TV Globo Ltd. v. Kelly Broad. Sys.*, 2001 U.S. Dist. LEXIS 19802, *6 (S.D.N.Y. Nov. 30, 2001) (the court found "utterly confusing" the pre-suit rejection of defendant's offer to use a disclaimer); *see also Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 282 (W.D. La. 1991).

*Records*, 296 F.3d 894, 902 (9th Cir. 2002); CC ¶¶ 44, 46. Under the seminal test formulated in *Rogers* v. *Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), "Dead Rising" could only interfere with MKR's rights "if the title had no artistic relevance to the underlying work whatsoever or, if it has some artistic relevance, unless the title explicitly misleads as to the source or content of the work." *See also Mattel,* 296 F.3d at 902 (adopting *Rogers* test for trademark claims against titles of expressive works). Under either prong, MKR's claim fails. *Woodard*, 2004 U.S. Dist. LEXIS 6292, *24-25 (title-based claim dismissed following *Mattel*). As MKR admits, "Dead Rising" directly refers to the zombies populating the game. Opp. at 17:9. Thus, the inquiry turns to the second prong of *Rogers* demanding that for MKR's counterclaim to succeed, "Dead Rising"—as a title—must explicitly mislead as the source of the work. *See Mattel*, 296 F.3d at 901. This is an extremely high standard MKR cannot meet.

### IV.    MKR'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW

MKR ignores the well-settled principle that the state law claims it has asserted here are entirely congruent with Lanham Act claims—and thus these claims fail for the same reasons its Lanham Act claim does. Opp. at 19-20; *Cleary v. News Corp.,* 30 F.3d 1255, 1263 (9th Cir. 1994). Indeed MKR's state law claims wholesale incorporate the allegations of its failed copyright and Lanham Act claims. CC ¶¶ 51-57; 58-63. No longer propped up by the Lanham Act claim, the Copyright Act's broad preemption of state law claims is the final headshot to MKR's state law claims. "[F]ederal copyright preemption of overlapping state law claims is 'explicit and broad.'" *Jacobsen v. Katzer*, 2007 U.S. Dist. LEXIS 63568, *6 (N.D. Cal. Aug. 17, 2007).

### V.    CONCLUSION

Capcom respectfully requests that the Court say "Game Over" to MKR's claims.

Dated: August 13, 2008                                    FENWICK & WEST LLP

By:  /s/ Jennifer L. Kelly
Jennifer L. Kelly

Attorneys for Plaintiffs and Counterclaim-defendants Capcom Co., Ltd. and Capcom Entertainment, Inc., and Third-Party Defendant Capcom U.S.A., Inc.